UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SIMEON DUGGINS,

NOT FOR PUBLICATION

                              Petitioner,          **MEMORANDUM & ORDER**
                                                   05-cv-4322 (CBA)

             -against-

ELIOT SPITZER, Attorney General
of the State of New York,

                              Respondent.
----------------------------------------------------------X
**AMON, Chief United States District Judge**.

## INTRODUCTION

Simeon Duggins brought this Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, on September 1, 2005. He seeks relief from his New York state conviction for first degree murder. Duggins's initial petition, filed *pro se*, requested relief on the grounds (1) that the trial court's decision to allow cross-examination on a prior criminal incident violated his due process right to a fair trial; and (2) that the trial court erred when it borrowed the definition of "criminal transaction" for New York's first degree murder statute from New York's double-jeopardy statute, and that the evidence was insufficient to convict him under the proper definition. On March 10, 2011, after reviewing the record, the Court appointed counsel for Duggins for the purpose of briefing a third claim, whether the trial court's supplemental jury instruction on the "criminal transaction" element violated Duggins's right to a jury determination of his guilt. Counsel briefed this claim and also asserted a fourth, that the "same criminal transaction" murder statute is unconstitutionally vague.

For the reasons set forth below, Duggins's petition is denied.

# BACKGROUND

*A. Underlying Facts*

The following facts were elicited at Duggins's trial. On July 3, 1999, Duggins went to the Vanderveer Estates apartment complex in Flatbush, Brooklyn with a .38 snub-nosed revolver. He had heard that Franklin Dennis, a member of the Crips gang, had ordered that any Crip encountering Duggins was to kill him on sight. When he arrived at the Vanderveers, Duggins encountered another Crip named Wayne Flowers. Duggins was scared that Flowers might attempt to carry out Dennis's order, so he hid on the roof of one of the apartment buildings. When he came down from the roof four hours later, he again encountered Flowers. This time the two argued, and Duggins shot and killed him. The shooting took place at 1:40 a.m. on July 4, 1999.

Duggins realized that his shooting of Flowers would only make Dennis more eager to see his kill order carried out. But instead of fleeing the Vanderveers, Duggins went back to the roof, surveying the area and waiting for Dennis to appear. When he spotted Dennis without fellow gang members, he crawled down the fire escape, crept up behind Dennis, and shot and killed him. This second killing took place at 3:10 a.m. Duggins fled into a vacant apartment and was able to escape from the Vanderveers by disguising himself in women's clothing. He was apprehended two weeks later in Sheepshead Bay, Brooklyn, apparently just after having taken LSD and smoking marijuana.

After spending the night in a holding cell, Duggins agreed to make a statement. He was read his *Miranda* rights, signed a waiver, and then proceeded to relate the above details about shooting Flowers and Dennis. The detectives asked that he repeat the story and recorded his statements as he did so. About an hour later, Duggins again confessed, this time on video camera.

Duggins was charged with first degree murder under New York Penal Law § 125.27(1)(a)(viii), which applies to a defendant who, "with intent to cause the death of another person . . . causes the death of such person . . . and as part of the same criminal transaction . . . with intent to cause serious physical injury to or the death of an additional person or persons, causes the death of an additional person or persons."

### B. Pre-Trial Motion to Dismiss the First Degree Murder Counts

On December 8, 1999, Duggins moved to dismiss the first degree murder counts. He argued that the evidence was legally insufficient to support first degree murder because the killings of Flowers and Dennis were not "part of the same criminal transaction" as required under § 125.27(1)(a)(viii). *See* Dec. 8, 1999 Mot., attached to D.E. #9. Duggins contended that as used in this statute, the phrase "same criminal transaction" calls for a narrow interpretation and "should not be confused with the definition found" in another New York statute, New York Criminal Procedure Law § 40.10(2). D.E. #9 at 50. Section 40.10(2), which is part of New York's statutory double-jeopardy provision, states:

> "Criminal transaction" means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either
>
> (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or
> (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.

Duggins reasoned that unlike § 40.10(2), which is "written broadly to adequately protect potential defendants from being prosecuted twice for the same offense," § 125.27(1)(a)(viii) must be construed narrowly "to protect a defendant from a first degree murder prosecution unintended by the legislature." D.E. #9 at 50. Duggins claimed that the "ordinary meaning" of "transaction" should apply, which, he contended, "begins with the first act of an activity, continues while the

activity is being carried out, and ends with the act which concludes the activity." *Id.* at 51 (citing *People v. Fernandez*, 173 Misc. 2d 938, 943 (Sup. Ct. Kings Cty. 1997)). This definition did not contain an express temporal proximity requirement; however, in his brief, he argued that the killings of Dennis and Flowers did not qualify as one "criminal transaction" under this definition because they were not connected "spatially or temporally" or "part of one continuous event." *Id.* at 53. Duggins's motion to dismiss also argued in the alternative that as applied to him, the "same criminal transaction" element of § 125.27(1)(a)(viii) was "unconstitutionally vague and over broad, as a matter of state and federal due process." *Id.* at 55.

## C. Trial and Conviction

Before trial, the court held a *Sandoval* hearing to determine whether the prosecution could introduce evidence of a past crime, an alleged assault to which Duggins pled guilty when he was a minor. The court precluded the evidence. Duggins testified at trial. He claimed that his confessions to killing Flowers and Dennis had been involuntary. He denied that any of the events in his elaborate confession had happened. He testified that when he gave the confession, he had been hallucinating because of the LSD, he had not slept all night, and the police had promised him leniency if he concocted a story of self-defense. Tr. 445-482. He further testified that he had asked for a lawyer—"The lady in my last case, Ms. Danielle"—but was not given one. Tr. at 452. Because of this last claim, the prosecution asked the trial judge to modify her *Sandoval* ruling so that the prosecutor could elicit the details of Duggins's "last case." The trial court did so and the prosecution cross-examined Duggins on the prior assault. Tr. at 485-88.

At trial, the parties also disputed the definition of "criminal transaction." During a charge conference on April 12, 2001, defense counsel objected that the model CJI charge on first degree murder failed to define the term "criminal transaction." Tr. at 581. In response, the trial judge

indicated that she intended to give a charge that borrowed the definition of "criminal transaction" from § 40.10(2).  Tr. at 581-82, 588.  Although defense counsel did not immediately object to this definition during the April 12 conference, he did so by letter dated April 16, 2001, the morning of summations and the court's charge to the jury.  *See* Apr. 16, 2001 Letter, attached to D.E. #9 at 41-43.  In that letter, defense counsel requested that the court define "same criminal transaction" as "the process of carrying out some criminal activity, beginning with the first act of the criminal activity in question and continuing until the criminal activity is carried out and the transaction completed."  *Id.* at 43 (citing *Fernandez*, 173 Misc. 2d at 943).  The letter also adopted by reference the positions advanced in Duggins's December 8, 1999 submission in support of his motion to dismiss the first degree murder counts.  *Id.*

The heart of the defense was that Duggins did not commit the homicides.  During the defense summation on April 16, 2001, however, counsel did argue to the jury that the shooting of Dennis "in a completely different section [from the shooting of Flowers], across the street in the Vanderveers, an hour-and-a-half later" could not be considered the "same criminal transaction." Tr. at 680.  Subsequently, out of the presence of the jury, defense counsel again objected that the evidence was insufficient to sustain a first degree murder conviction under a unitary "criminal transaction" theory and again moved to dismiss the first degree murder counts.  Tr. at 683-84. The trial court denied the motion and rejected the defense's proposed definition of "same criminal transaction" in the April 16 letter.  Tr. at 684.  Following the government's summation, in which the prosecutor argued to the jury that the two killings would constitute the "same transaction, whether it took a couple of hours or ten minutes," Tr. at 715, the judge instructed the jury in accordance with the definition of "criminal transaction" in § 40.10(2), Tr. at 739.  Defense counsel did not make another objection to the "criminal transaction" instruction.  Tr. at 750-54.

During deliberations the jury sent a note asking the trial judge to "[p]lease redefine same criminal transaction with examples, especially saying how much time between the crimes in order to call them part of the same criminal transaction." Tr. at 761. The judge declined to give examples, instead telling counsel for both sides that she would simply tell the jury that "time is only one of the factors." Tr. at 762. The judge then instructed the jury: "if you listen carefully, you will see that time is one of the ways you determine it. And there is another one as well." She then reread the definition in § 40.10. Tr. at 763. Defense counsel did not object to the court's response to the jury's question. Tr. at 761-69.

The jury convicted Duggins of first degree murder, finding that he had intended to and did kill Dennis and that he had intended to cause serious physical injury to Flowers and killed him. At sentencing, Duggins admitted that he had lied at trial "about almost everything" and that he had in fact killed Flowers and Dennis. Sent. Tr. at 17. The court sentenced him to twenty-five years to life imprisonment. *Id.* at 21.

### D. Direct Appeal

Duggins appealed his conviction. He argued to the Appellate Division (1) that the trial court erred when it modified its *Sandoval* ruling; (2) that his confessions were involuntary and should have been suppressed; and (3) that the trial court's involuntariness charge was inadequate. Duggins did not make any challenge related to the trial court's definition of "criminal transaction." The Appellate Division affirmed. *People v. Duggins*, 766 N.Y.S.2d 702 (App. Div. 2d Dep't 2003). It found that the *Sandoval* modification was error but held that the evidence was harmless. It rejected the second and third claims outright.

Duggins was granted leave to appeal to the Court of Appeals, where he brought two claims: (1) that the trial court employed an overly broad definition of "criminal transaction" by import-

ing the definition from § 40.10(2); and (2) that the trial court's *Sandoval* error was not harmless.[1]

Duggins contended that the trial court should have defined the "same criminal transaction" requirement of § 125.27(1)(a)(viii) had been proposed in his motion to dismiss the first-degree murder counts, *i.e.* "in the ordinary, commonly understood sense of the words, as acts with a close temporal and/or spatial connection." Def.'s CoA Br. at 44. Duggins claimed that under this definition, the evidence was insufficient to support his conviction. *Id.* In the alternative, Duggins argued that a new trial was warranted because the trial court's initial and supplemental jury instructions on the definition of "criminal transaction" denied Duggins his "due process rights to be convicted only if the evidence supported his guilt beyond a reasonable doubt under *Jackson v. Virginia*, 443 U.S. 307 (1979), to fair notice of what conduct would constitute first-degree murder, and to a fair trial." *Id.* at 44, *see also id.* at 75-77. Specifically, Duggins argued that after the jurors asked for clarification about the temporal limitations in the term "same criminal transaction," the trial judge improperly "disabused [them] of their common usage sense that some temporal connection was needed," and but for this error, "they might well have acquitted appellant of both first degree murder counts." *Id.* at 75-77.

A divided Court of Appeals rejected Duggins's definition of "criminal transaction" in § 125.27(1)(a)(viii). *People v. Duggins*, 3 N.Y.3d 522 (N.Y. 2004). The majority found that § 40.10(2) did indeed supply the proper definition. The dissent would have adopted the first prong of that definition—which requires a temporal connection—but rejected the second, which requires that the acts be "so related in criminal purpose or objective" as to be "integral parts of a single criminal venture." The majority found no basis for such a restriction.

---

[1] Although Duggins did not raise any claim regarding the definition of "criminal transaction" to the Appellate Division, he adequately preserved the claim for review by the Court of Appeals pursuant to C.P.L. 470.35[1]. *See People v. Duggins*, 3 N.Y.S.3d 522, 527 n. 4 (N.Y. 2004).

Nevertheless, the majority also added another wrinkle. It found that even though the "same criminal venture" prong of § 40.10(2) says nothing about time, the language of § 125.27(1)(a)(viii), the murder statute, "contemplates a virtual simultaneity, or at least contemporaneity," between the acts. *Duggins*, 3 N.Y.3d at 532. Accordingly, a finding of "same criminal transaction" under § 125.27(1)(a)(viii) requires "contemporaneous conduct" regardless of which prong of § 40.10(2) the jury finds satisfied. Ultimately, the majority held that the trial court's jury instruction had been correct despite its omission of a contemporaneity requirement. The majority then found that the evidence was sufficient to convict Duggins under either "criminal transaction" prong. It did not address the trial court's response to the jury's question regarding the temporal relatedness necessary for a finding of "same criminal transaction."

The Court of Appeals summarily dismissed Duggins's claim that the trial court's *Sandoval* error was not harmless, holding that it "does not warrant reversal." *Duggins*, 3 N.Y.3d at 534.

## DISCUSSION

### I. AEDPA Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a district court shall entertain an application for a writ of habeas corpus on behalf of a person . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA further provides that a federal habeas court may grant relief from a state court's "adjudica[tion] on the merits" only if it resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A ruling on the merits is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or. . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A ruling is an "unreasonable application" of clearly established Supreme Court precedent if it "applied [Supreme Court law] to the facts of [the] case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## II. *Sandoval* Modification

Duggins's first claim is that the trial court violated his due process right to a fair trial when it allowed the prosecution to cross-examine him on a prior crime. The Appellate Court held that allowing this cross-examination was error under state law, but held that the error was harmless. *Duggins*, 766 N.Y.S.2d at 702. The Court of Appeals affirmed. *Duggins*, 3 N.Y.3d at 534. This constitutes an adjudication on the merits, so the state court decision is entitled to AEDPA deference. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (state court need not "explicitly refer to either the federal claim or to relevant federal case law"). Because the Court of Appeals's determination was neither "contrary to, [n]or involved an unreasonable application of, clearly established federal law," Duggins's claim is denied.[2]

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Habeas relief is appropriate for allegedly erroneous admission of evidence only where its admission violates due process. The

---

[2] The State also argues that Duggins's federal constitutional claim has not been exhausted because his brief before the Court of Appeals invoked mainly New York state harmless error jurisprudence. The Court disagrees. Duggins cited federal cases, invoked due process, and alleged facts familiar to constitutional litigation. *See Jackson v. Edwards*, 404 F.3d 612, 618 (2d Cir. 2005). Even if the claim is unexhausted, the Court exercises its discretion to deny it on the merits. *See* 28 U.S.C. § 2254(b)(2).

admission of evidence violates due process only if the evidence is "sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998). Courts therefore routinely reject claims where the sum of the evidence of the petitioner's guilt was overwhelming. *See, e.g.*, *McKinnon v. Superintendent*, 355 F. App'x. 469, 473 (2d Cir. 2009); *Gouvatsos v. Ercole*, No. 08-cv-2049 (SJF), 2010 WL 5173569, at *14 (E.D.N.Y. Dec. 13, 2010); *Senor v. Greiner*, No. 00-cv-5673 (JG), 2002 WL 31102612, at *13 (E.D.N.Y. Sept. 18, 2002).

Although the Appellate Division decided that the trial judge's decision was an abuse of discretion, this Court cannot conclude that it was a denial of due process. Duggins's three detailed confessions presented overwhelming evidence of his guilt. There is no reason to believe that the jury would have credited Duggins's implausible, inconsistent account of his allegedly coerced confession if only they had been left in the dark about his past crime. As such, the trial court's modification of its *Sandoval* ruling did not violate due process. The Court of Appeals' denial of this claim was therefore not contrary to or an unreasonable application of clearly established federal law."

## III. Definition of "Criminal Transaction" and Sufficiency of the Evidence

Duggins's second claim is that the trial court's definition of "criminal transaction" in § 125.27(1)(a)(viii) was incorrect, and that under the proper definition the evidence was insufficient to convict him. The Court of Appeals held that the trial court was correct to borrow the definition of criminal transaction in Penal Law § 125.27(1)(a)(viii) from Criminal Procedure Law § 40.10(2). This Court lacks "authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). This Court therefore denies habeas relief on the claim that the state courts defined

"criminal transaction" improperly. And because the Court cannot substitute Duggins's definition of the statute for that adopted by the Court of Appeals, there is no reason to consider whether the evidence was sufficient under his definition.

To the extent Duggins's petition, construed liberally, challenges the sufficiency of the evidence to convict him under § 125.27(1)(a)(viii) as defined by the trial court and Court of Appeals, his claim is similarly without merit. The Court of Appeals found ample evidentiary support for the conviction. The Court agrees that, under *Jackson v. Virginia*, "review of the record in the light most favorable to the prosecution [reveals that] a rational factfinder could [] have found the petitioner guilty . . . ." 443 U.S. 307, 324 (1979). The Court of Appeals' decision was therefore neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law."

## IV. Supplemental Jury Charge

Duggins's third claim is that his due process right to a jury determination of his guilt of every element of the offense was violated by the trial court's supplemental jury charge. Specifically, he objects to the trial court's response to the jury's note asking "how much time between the crimes in order to call them part of the same criminal transaction," when the court explained "you will see that time is one of the ways you determine it. And there is another one as well." This, Duggins argues, is directly at odds with the Court of Appeals' finding that "subdivision (1)(a)(viii) contemplates a virtual simultaneity, or at least contemporaneity, between the 'two or more or a group of acts' necessary to establish 'same transaction' first-degree murder, even acts that are 'elements or integral parts of a single criminal venture.'" *Duggins*, 3 N.Y.3d at 532. According to Duggins, the jury's question indicates that it was concerned about the time between the killings; the trial court's erroneous supplemental instruction dispossessed them of this con-

cern, causing them to return a guilty verdict. Although neither the majority nor the dissent's opinion in the Court of Appeals mentioned the supplemental instruction, this argument was raised in Duggins's brief to the Court of Appeals. *See* Def.'s CoA Br. at 75-77.

The State all but concedes that the supplemental instruction was error. It argues, however, that even if the instruction was technically incomplete, the case *People v. Dekle*, 56 N.Y.2d 835 (1982), dictates that as a matter of State law, the elements of a crime are determined by reference to the elements as charged to the jury without objection. Suppl. Mem. in Opp. at 10. In the alternative, it argues that any error in the charge did not deprive Duggins of due process, because even if the jury had been properly instructed about the temporal proximity requirement, it would have found that requirement satisfied by the ninety minute lapse between the two murders. *Id.* at 6. For the same reason, the State argues that any error in the charge was harmless. *Id.* at 6-7.

The Court agrees with Duggins that the supplemental jury instruction was technically incorrect, and it rejects the State's argument under *Dekle*. Nevertheless, it finds that the error did not violate Duggins's due process right to a jury determination of guilt, as a properly instructed jury would have returned the same verdict. *See Blazic v. Henderson*, 900 F.2d 534, 541-42 (2d Cir. 1990) (citing *Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977)). In any event, even if the error did amount to a constitutional violation, that error was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). The claim is therefore denied.

### A. People v. Dekle *and Failure to Object*

The State first invokes *People v. Dekle*, which held that "for the purpose of judging the legal sufficiency of the evidence, the substantive elements of a crime are the elements as charged to the jury without objection, rather than the elements as defined by statute or construed by the state courts," *Dekle*, 56 N.Y.2d at 837; Suppl. Mem. in Opp. at 10. Because Duggins did not specifi-

cally fault the jury charge for omitting a contemporaneity requirement, the State argues, that charge dictates the elements of the crime.

The *Dekle* principle is not an all-purpose tool for defining substantive elements; it is a preservation rule designed to circumscribe appellate review. *See People v. Gray*, 86 N.Y.2d 10, 19 (1995). As neither the Appellate Division nor the Court of Appeals relied on a procedural bar, this Court declines to enforce a state procedural rule that the state courts did not themselves seek to enforce. *See Blazic*, 900 F.2d at 538; *Washington v. Harris*, 650 F.2d 447, 450-51 (2d Cir. 1981).

### B. Merits

The Court now turns to the merits of Duggins's claim that the supplemental instruction violated his due process right to a jury determination of guilt beyond a reasonable doubt on each element of the offense. *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993) (due process mandates that "[t]he prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." (internal citations omitted)); *In re Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). He argues that the supplemental instruction effectively omitted an element of the offense—the contemporaneity requirement—and that the jury therefore could not have found it beyond a reasonable doubt.

"In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal

law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985). "[S]tates are free to define the elements of, and defenses to, crimes," but once they have done so "federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated those laws." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). To determine whether a state court jury instruction violated due process, the Second Circuit has framed the inquiry as requiring the habeas court to address three questions: (1) whether the jury instruction was error under state law; (2) if so, whether the charge "so infected the entire trial that the resulting conviction violates due process" under *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); and (3) if so, whether the error is remediable under AEDPA. *Davis*, 270 F.3d at 124. If the Court finds that the instruction rose to the level of a constitutional violation, it must also consider whether that error was nonetheless harmless. *Neder v. United States*, 521 U.S. 1, 15 (1999); *California v. Roy*, 519 U.S. 2, 5-6 (1996).

      i.      Whether the Supplemental Instruction Was Error Under State Law

The Court of Appeals found that the appropriate definition for "criminal transaction" in § 125.27(1)(a)(viii) is found in C.P.L. § 40.10(2). Section 40.10(2) has two disjunctive prongs. One is satisfied when acts are sufficiently related in time and circumstance; the other is satisfied when acts are so united by criminal motive or objective that they are "parts of a single criminal venture." The majority also, however, identified another requirement for conviction under the "same criminal transaction" murder provision that is not plainly stated in the text, namely: contemporaneity. This contemporaneity requirement derives not from the definition of "criminal transaction" as supplied by § 40.10(2) but rather from the tenses of the verb "cause" in § 125.27(1)(a)(viii) itself. Specifically, a defendant is guilty if he "*causes* the death" of one individual and "*causes* the death of an additional person" in the same criminal transaction. § 125.27(1)(a)(viii) (emphasis added). The majority interpreted the Legislature's use of the present

tense to imply that "any additional homicides must be contemporaneous with the threshold intentional murder," regardless of which § 40.10(2) "criminal transaction" prong it finds satisfied. *Duggins*, 3 N.Y.3d at 532.

At trial, the court correctly adopted § 40.10(2)'s definition of "criminal transaction." But when the jury sought clarification, the trial court in its instruction suggested, albeit obliquely, that the jury need not consider temporal relatedness to return a guilty verdict under the "single criminal venture" prong of the definition. Prior to the Court of Appeals' opinion, it appears that no one—not the trial court, trial counsel, the Appellate Division, or appellate counsel—realized that § 125.27(1)(a)(viii) carried a contemporaneity requirement independent of the definition of criminal transaction. Nonetheless, given the Court of Appeals' interpretation, the omission of a contemporaneity requirement in the supplemental jury charge was error under state law.

ii.    Whether the Error Violates Due Process Under *Cupp v. Naughten*

Having determined that the supplemental jury charge was error under the interpretation of § 125.27(1)(a)(viii) made by the Court of Appeals, the next question is whether the error violates due process. The standard for finding that an erroneous jury instruction was "so prejudicial" as to "support a collateral attack on the constitutional validity of a state court's judgment" is whether the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Kibbe*, 431 U.S. at 154 (quoting *Cupp*, 414 U.S. at 147). Applying this standard, the Supreme Court and the Second Circuit have held that petitioners are not entitled to relief where the record makes clear that a properly instructed jury would have returned the same verdict. *Kibbe*, 431 U.S. at 156-57 (comparing instructions that were given with those that should have been given and concluding that additional instructions "would not have affected the verdict"); *Blazic*, 900 F.2d at 541-42 (no due process violation where omission of defense in trial court instruction

"would not have affected the jury's verdict"); *Gibbs v. Donnelly*, 402 F. App'x 566, 568 (2d Cir. 2010) ("We have declined to find a violation of due process where a justification charge would not have affected the jury's verdict."); *Williams v. Smith*, No. 10-cv-3043 (JG), 2011 WL 96735, at *7-12 (E.D.N.Y. Jan. 11, 2011) (applying *Kibbe*, *Blazic*, and *Davis*); *contrast Davis*, 270 F.3d 111 (finding that, unlike in *Blazic*, "there is a substantial likelihood that a properly instructed jury would have found in [petitioner's] favor on the homicide charge").

The only evidence in the record established that the murders took place approximately ninety minutes apart. The heart of Duggins's defense at trial was that he did not commit the offense and that the account of the killings he gave in his confessions was entirely fabricated—an argument the jury obviously rejected. And Duggins's own account—of both his motivations and his course of conduct—was the primary and undisputed source from which the jury could derive facts about the killings themselves. These confessions established (a) that Duggins's purpose in both killings was to prevent Flowers and Dennis from killing him; (b) that immediately after killing Flowers, he fled momentarily to a park and then returned to a roof in the Vanderveers to watch for Dennis; (c) that he spotted and then watched Dennis from the roof; and (d) that he descended from the fire escape, snuck up on Dennis, and killed him. Because these facts are not controverted, the only question is whether they constitute such weighty evidence of contemporaneous conduct that a jury made aware of § 125.27(1)(a)(viii)'s contemporaneity requirement would have found it satisfied. This Court is satisfied that they do.

Had the jury been properly instructed, it would have been aware of a contemporaneity requirement that is far from strict. This is evident from the Court of Appeals' opinion generally, and particularly from its discussion of the sufficiency of the evidence under § 125.27(1)(a)(viii). In finding the evidence sufficient, it explained

After killing [Flowers], defendant raced back to an area less than a block away where he knew he would likely encounter [Dennis].  Although defendant had a 90-minute interval during which to leave, he instead chose to stay, determined to "go on with it."  Carrying through on his continuing motivation to "squash" the contract [on his life], defendant indeed went "on with it" by reloading his gun and lying in wait for an opportunity to "catch[]" [Dennis].  Ultimately defendant completed exactly what he had set out to do: he came down from his rooftop sanctuary, sneaked up on [Dennis] and shot him to death.

The spatial and temporal proximity of defendant's homicidal acts, all of which were fueled by a common motivation, establish that he acted during the "same criminal transaction."  Indeed, defendant's various acts were both "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident" and "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture."  Put differently, defendant's two homicidal acts were *part of a continuous course of conduct sufficient to establish the contemporaneity necessary to constitute "same transaction" first-degree murder.  Duggins*, 3 N.Y.3d at 533-34.

Informed by the Court of Appeals' opinion, a trial court would make a few things clear to a jury.  It would instruct that § 125.27(1)(a)(viii) generally requires that the crimes be at least contemporaneous, but not necessarily simultaneous, even if the jury finds that the acts were "parts of a single criminal venture."  The judge might go on to explain that "contemporaneous" means something like "belonging to the same time or period; occurring at about the same time." Bryan A. Garner, Garner's Modern American Usage 191 (2003).  Lastly, it would likely explain that the question of whether the evidence establishes "the contemporaneity necessary to constitute 'same transaction' first-degree murder" can be informed by surrounding context and circumstances.  Thus, the jury would be tasked not with mechanically applying some maximum time cutoff, but rather with determining, as the Court of Appeals did, whether "the two homicidal acts were part of a continuous course of conduct."

With these instructions, a rational jury would be certain to find Duggins's homicidal acts sufficiently contemporaneous to be part of the "same criminal transaction."  1:40 A.M. to 3:10 A.M. is not a very long time.  During this interval, Duggins took sequential, uninterrupted steps to-

wards a singular objective, evidence of all of which comes from Duggins's own coherent narrative. If any of the evidence at trial had been disputed, or if Duggins had taken even one intervening action to break his contiguous course of conduct, this might be a harder case. But here the jury was presented with overwhelming evidence of contemporaneity.

It is true, of course, that the supplemental instruction was given as a result of a question from the jury. But the Court is not willing to view that question as evidence that it was so concerned by the ninety-minute interval between the killings that it would have struggled with the question even after being properly instructed. Moreover, even if the Court could conclude that the jury was at one point concerned about temporal relatedness, it will not assume that the jury would have remained irrationally concerned after being properly instructed. The Court is fully satisfied that on the evidence elicited at trial, a properly instructed jury would have returned the same verdict. Duggins did not suffer a violation of his right to due process.

In any case, even if the Court were to find that the supplemental jury charge rose to the level of constitutional error, Duggins would not be entitled to relief because the error was harmless. It is well-settled that an instructional error involving an omission or misdescription of an element of the offense—even when amounting to a constitutional violation—is not considered a "structural error" requiring automatic reversal of conviction, but rather is the type of "trial error" subject to harmless error review. *See Neder v. United States*, 521 U.S. 1, 15 (1999) (omission of an element in a jury charge is subject to harmless error review); *California v. Roy*, 519 U.S. 2, 5-6 (1996) (misdescription of an element in a jury charge is subject to harmless error review); *cf. Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (jury instruction on alternative theories of guilt, one of which was legally improper, is subject to harmless error review); *United States v. Ferguson*, 676 F.3d 260, 276-77 (2d Cir. 2011) (where the jury is instructed on multiple theories of liability,

one of which is defective, the defendant is "not prejudiced by the infirm instruction" if it "would have necessarily found the defendant[] guilty on one of the properly instructed theories of liability"). On collateral review, the standard for finding that an error is harmless is less stringent than on direct review: an error will be harmless unless it actually had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.[3] Therefore, although they are technically distinct inquiries, on collateral review, the standards for finding that an error is not harmless and for finding a due process violation are quite similar: both ask whether the jury's verdict would have been different but for the error. For substantially the same reasons advanced above, then, the Court finds that even if the error in the trial court's supplemental jury charge were considered a violation of due process, it was harmless.

The Court need not reach the third step of the *Davis* inquiry—whether the error is remediable under AEDPA, *Davis*, 270 F.3d at 124.

## V. Vagueness

Duggins's final claim is that § 125.27(1)(a)(viii) is unconstitutionally vague. The parties did not brief this claim to the Court of Appeals, although, as noted, Duggins cursorily argued that the definition of "criminal transaction" as charged to the jury denied Duggins his due process right to "fair notice of what conduct would constitute first-degree murder." Def's CoA Br. at 44. The Court of Appeals briefly addressed the issue of vagueness in its opinion, suggesting that use of the § 40.10(2) definition of "criminal transaction" rendered § 125.27(1)(a)(viii) sufficiently precise. *Duggins*, 3 N.Y.3d at 529. ("[A]pplying the species of dictionary definition proposed by defendant would render the statute vague, something the Legislature surely did not intend…. By contrast, CPL 40.10(2) defines exactly what criminal conduct, both temporal and motivational,

---

[3] In contrast, on direct review, the court must find beyond a reasonable doubt that the error was harmless, and the State bears the burden of proof. *Brecht*, 507 U.S. at 630 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

will lead to liability under subdivision (1)(a)(viii) of the first-degree murder statute.")  The parties both contend that this Court should presume that the Court of Appeals adjudicated this claim on the merits and that it is therefore entitled to AEDPA deference.  Suppl. Mem. at 25-26; Suppl. Mem. in Opp. at 32; *see Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Jimenez v. Walker*, 458 F.3d 130 (2d Cir. 2006).  The Court finds that the Court of Appeals' determination that § 125.27(1)(a)(viii) is not unconstitutionally vague was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law."

Due process requires that a criminal offense be defined "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010).  An offense need not, however, achieve "meticulous specificity" at the expense of "flexibility and reasonable breadth." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *see United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999) ("[S]ome ambiguity in a statute's meaning is constitutionally tolerable.").  In conducting a vagueness review, this Court "must take the statute as though it read precisely as the highest court of the state has interpreted it." *Kolender v. Lawson*, 461 U.S. 352, 355 n.4 (1983).  And because the law challenged here does not implicate First Amendment interests, this Court must "uphold [it] . . . if the particular enforcement at issue is consistent with the core concerns underlying the statute." *Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010).

Applying this standard, the Court finds § 125.27(1)(a)(viii) sufficiently definite.  Duggins's primary vagueness argument is that the term "criminal transaction" means different things in different statutes. Mem. in Supp. at 25-27.  By using that term, he argues, subdivision (1)(a)(viii) enables arbitrary enforcement.  Even if it were true that definitions for "criminal transaction" are

so varied, the argument fails. This is because the Court of Appeals adopted only one definition. New York state's courts, factfinders, and law enforcement officials (not to mention this Court), are bound by this construction—they are not free to adopt whichever definition of "criminal transaction" suits them.

Duggins next argues that the narrowed construction adopted by the Court of Appeals is itself vague. This is because different juries presented with the same facts could reach different results about whether two acts are part of the same criminal transaction or are contemporaneous. Again, the Court is not persuaded. "[T]he possibility that different juries might reach different conclusions" does not itself render a statute impermissibly vague. *Smith v. United States*, 431 U.S. 291, 309 (1977). Nor does the Court of Appeals' gloss on this particular statute authorize "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008). Indeed, it does just the opposite, replacing the words "same criminal transaction" with the articulated two-pronged test in § 40.10(2) and pointing out a contextual guidepost in the form of the contemporaneity requirement. And finally, because § 125.27(1)(a)(viii) so clearly applies to the sort of motivationally unified and contiguous conduct for which Duggins was convicted, he may not challenge it for vagueness. *See Parker v. Levy*, 417 U.S. 733, 756 (1974).

The Court of Appeals' decision was neither "contrary to, [n]or an unreasonable application of" the Supreme Court's vagueness precedents.

## CONCLUSION

For the above reasons, Duggins's petition is denied. Since Duggins has not made "a substantial showing of the denial of a constitutional right," no certificate of appealability shall issue. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated: Brooklyn, N.Y.
        September 28, 2012

                                        _____/s/_____
                                        Carol Bagley Amon
                                        Chief United States District Judge